The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and its Honorable Court. All right, Mr. Seymour, whenever you're ready, we'll be glad to hear from you. Thank you, Your Honor. My name is Richard Seymour. I'm representing Tony Weeks. There are, in addition to answering the questions that Your Honors may have, there are five main points that I'd like to make in this argument. The first is that there are numerous factual points demonstrating triable issues of material fact that should have precluded summary judgment. Second, that there is a fundamental flaw in the procedure that was used below. Third, the lower court's denial without explanation of the Rule 56D affidavit submitted by counsel was error. Fourth, the Cleveland v. Policy Management point on which the government relies. And fifth, the contention that there can be no proper request for reasonable accommodation after a notice of termination is provided. I would like to just take one moment and dispose of the fourth item quickly because it's a one-sentence point. This is not the Cleveland v. Policy Management situation. The plaintiff was trying to get off her benefits and onto employment where she would be a taxpayer. There's no question here that she was improperly trying to get benefits and then make a discrimination claim. She was trying to get off benefits. The first point on the factual points, it's a general rule in summary judgment that if there are differences among managers as to the reasons for termination, as to the quality of the plaintiff's work, summary judgment is inappropriate. The plaintiff had one immediate supervisor who saw her day in and day out and saw all of the work that she did. That supervisor testified that she was totally satisfied with the plaintiff's work and would have told that to Ms. Warner. I'm sorry, I have a question. What was that supervisor's name? I just want to make sure I have the players straight. Noma Carter, Your Honor. Right, okay, thank you. And the testimony appears on pages JA 1452 and JA 1453. Yes, I'm with you. When she's talking about conversations with the two supervisors. Second, there's a general doctrine with respect to summary judgment in employment cases that if the decision maker states different reasons, inconsistent reasons at different times, that that is a triable issue for a jury. The jury has got enough to decide whether the individual is telling the truth one time, the other time, or both times. And here Ms. Warner directly contradicted herself. In her cross-examination in the administrative hearing, she denied that the work that the plaintiff did with timesheets, mistakes in filling them out, had anything to do with termination. That's JA 1285. She denied that use of the telephone, calls that were being made, being away from her desk, she said that had nothing to do with the termination decision. That's JA 1303. At the unemployment compensation hearing, she said that socializing, not focusing the entire time at work, that was one of the reasons for termination. That is JA 1925. 1927, again, personal phone calls she relied upon as a reason for termination. This is after the unemployment hearing examiner had stated that it was a defense only if she had engaged in misconduct at work. And yet the termination decision itself relied upon these things. So she's all over the map in terms of what her reason is. That's information from which a jury could decide not to credit her. And we know from the Supreme Court's decision in Reeves against Sanderson Plumbing Products that where there is that kind of information, it is to be considered on a judgment as a matter of law or summary judgment decision, but not to be given weight. One can only give weight to evidence that the jury is required to believe. So it was a mistake to rely on that. The third basic summary judgment principle is if the defendant cannot even agree on who the decision makers were, that's a question for summary judgment. And this is something that just came to my attention this morning, Your Honor. I'm looking at JA 334, where she says that she was directed to fire Miss Works. She had a meeting with her, Miss Works, on July 18th, 2003. Miss Works was told that if I had to make a decision today, I would recommend to terminate you. But she's not making a decision that day. There are still a couple of months left to go on the one-year probationary period. And you can work this out, she tells Miss Works. Then she talks to her supervisors who say terminate her now. Those supervisors that she spoke to, the managers over her, were not witnesses, I understand, at the administrative hearing. And those are people that have to be gone into. And who were those people that weren't witnesses at the administrative hearing that you're referring to? Kathy Fox was the immediate supervisor of Marjorie Warner. And there's a person by the name of Denise. Your Honor, could I have counsel tell me the surname of Denise? Kendall? I think that's right, Your Honor. Then the next item with respect to the factual points that make summary judgment unavailable in this case, we submit. And, Your Honor, I confess I became involved in this case only one month ago. So I looked with great interest at the briefs, and especially the government's brief, to see what there was to support it. Because if you look at the two briefs fairly, it's hard to believe they describe the same person. There's a reasonable person taking advantage, if you look at the plaintiff's brief, a reasonable person trying to take advantage of a government program designed to take people off of benefits and make them productive, taxpaying citizens. That's the program that she was under. And she made some mistakes. She did things properly. She learned. She had basic skills. If you look at the defendant's brief, and if you look at the termination letter, this is the employee from Hades. She didn't do anything right. She made every possible mistake, and no employer could possibly be asked to put up with somebody like this. So I started looking at the record references that there were in the briefs, and I was surprised to put the thing mildly. For example, the government says on page 44 of their brief, plaintiff admitted she spent, quote, an excessive amount of time away from her workstation. One citation, JA-409. What plaintiff actually said at JA-499 was, when they asked, why are you away from your workstation, this begins at line 22, because they had me working. Some days I was working, if I'm correct, I was working on the fourth floor during IDT training. In that process, every hour they start IDT. I have to go down there, unlock the room, set the room up, get the time in sheet, sign in sheet, make sure the students sign in and make sure they're able to log on. That's JA-499 carrying over to JA-500. What she admitted was that her duties took her away from her desk, and yet that is used by the government to say, and it's used by the district court to say, that she wasn't doing her job. Another example. I have a question, because there is a long list in Apelli's brief at page 44 of things the appellant admitted. Are each of those things not supported by the record, in your view? Your Honor, every single one that I looked up, let me just take a look at page 44 to make sure we're talking about the same one. The plaintiff admitted she fell asleep in staff meetings. That's another one that's wrong. What actually happened was that they had a fire. She had two problems. One, she had an adjustment of her medications that made her groggy. So she admits, yes, she could have dozed off on things. I've dozed off at American Bar Association meetings, I have to tell the truth. But the time that she admitted dozing off was during a fire training session. Now, she'd been in the Navy for many years. She'd gone through advanced fire training in the Navy. She had certifications in the stuff, and they spent two hours going through basics. She testified that all the management trainees and a lot of the others who were there in those sessions were dozing by the time the guy got to the end of this two-hour presentation. That's not the impression that the government creates with that citation, which is JA-174. Plaintiff admitted she did not perform adequately on the project Johnson Bay gave her, citing JA-666. And this is one of the issues that highlights the difference between an administrative proceeding and a judicial proceeding. Mr. Johnson Bay could not be brought to the administrative hearing because he retired. There's no subpoena power in these administrative judges. He gave her, and he complained to Ms. Warner, and what he said got carried forward. She could not do basic arithmetic, basic math. But the facts are very different. The facts are that – let me just get the right tab so I've got the right citations. The court said she could not do the basic arithmetic to total up the budget items. The problem actually was, and the person who dealt with it was Trevette Hoard. There's no dispute about that. And at JA-906 through 908, she describes what the process was, that they had multiple requests coming in from different sources so that the same item was being requested multiple times. There were duplicates and triplicates of the worksheet. And that there had never been a proper set of instructions given to Ms. Works, and she had absolutely no question that Ms. Works would have been able to do it properly if she'd been given the instruction. That was the basic math part. There were also formulas that were involved in the budget. And here I have JA-85, JA-153, 154 that deal with that. The formulas in the budget were not noticed to be wrong, even by Mr. Johnson Bay. They had to go to the budget department to get it done. And the management assistant who assisted in getting that finalized also did not have the knowledge and had to go to the budget department. So what we have are a set of standards that were singularly harsh directed to the plaintiff. The district court said that it did not matter. It said, in essence, this is page 7 of the decision on denial of reconsideration, and that is JA-2275, that the court did not sit as a super-personnel department to second-guess the employer's decisions. Well, the court is not supposed to simply rubber-stamp employer decisions. If an employee with a disability is treated differently than non-disabled employees, that's strong evidence bias. Peridot evidence has always been given a strong record by the courts. Okay. I have another question then before you run out of time. It's on your 56D, your need for discovery. As I understand it, the motion for summary judgment was filed, and then there were five months between that and your filing of the 56D affidavit. What was going on between those two time periods that you couldn't conduct discovery? Your Honor, may I consult with counsel for just a moment in order to answer your question? Yes. Your Honor, the summary judgment motion in the administrative process, no discovery was taken because Ms. Works was not represented by counsel. She was represented by someone who simply didn't seek discovery. At the time that counsel came in, later in the administrative process, the administrative judge refused to reopen the discovery period, so there was no opportunity for discovery then. The motion for summary judgment and Rule 12 motion filed in the district court didn't allow for discovery. This happens, unfortunately, uncommonly often. Have I answered your Honor's question? Well, except to the extent that the Rule 56D affidavit in which you indicated that you needed discovery was not filed until five months after the motion was filed. So there's a five-month time period when the court is not given the opportunity to even accord you discovery. August 26, 2010 to February 8, 2011. Your Honor, I confess I do not know the answer to that question. Okay. Judge Traxler, I believe you had a question. Was she represented by counsel during that time? She was, Your Honor. You just elected not to seek discovery. Your Honor, I'm told that there was an agreement between the parties not to do discovery before the decision on the summary judgment. I don't know anything more about that. That's just what I've been informed. Is that anywhere in the record? Your Honor, at rebuttal time, I'll give a record citation if there is one and if I can find that. I'm out of time. Thank you, Your Honor. All right. Let me hear from Mr. Medinger. May it please the Court, Your Honors. The appellant in this case made a very commendable attempt to reenter the workforce after being out of it for about 10 years. And equally commendable is the fact that the agency was willing to give her a chance to do so. And, in fact, the record shows that the agency gave her opportunity after opportunity to prove that she could do the essential functions of her job. But the ample record in front of this Court shows quite clearly that, in fact, she just couldn't simply do the job. She couldn't perform the essential functions. And as such, she wasn't retained. And as such, because she wasn't retained for these performance reasons and because of her workplace conduct, and there's not one scintilla of evidence to suggest that discrimination or retaliation played any part, we respectfully ask that this Court affirm the grant of summary judgment in favor of the agency. And now, Your Honors, I'd like to pick up at the point that we just left off on, just so there's no unclarity in the record. I think I understand the procedural history to be as follows, and this is responsive to Judge Thacker's question. At the administrative phase and the EEO phase, I believe Ms. Works was represented by a union attorney, a gentleman by the name of Milo Martin. My understanding is that Mr. Martin chose not to pursue the discovery that he could have pursued in the administrative process. Sometime towards the end of the process, a gentleman by the name of Mr. Gilbert took on the representation of Ms. Works. And at that point, the administrative law judge said, too much water has gone under the bridge. We're about to do this evidentiary hearing. I'm not going to reopen this case for discovery. So to the extent we're now hearing a 56-D argument, I think my retort would be the appellant slept on her rights during the administrative process. And even notwithstanding the fact that they didn't go through the discovery that they now say they want, they actually did get an enormous amount of discovery in the administrative phase. They got the entire EEO record, which has a lot of affidavits from many of the key players. They had that four-day evidentiary hearing in which almost all of the key players gave testimony. But not all of the key players. Is that right? The only one individual that I believe that I heard did not give testimony that was a key player was William Johnson B. And he was Ms. Warner's number two and a supervisor in that shop. And he had left the agency at that point. Right. But he also was the one who did her March evaluation and who assigned her two of the assignments that are now deemed inadequate, the October 2002 and the June 2003 assignment. So why shouldn't we liberally construe 56-D to permit discovery now in order to safeguard that process before a grant of summary judgment? For a variety of reasons, Your Honor. First and foremost, I'll say with respect to Mr. Johnson B., he actually did give testimony at a Maryland state unemployment benefits hearing. And that transcript is in the record. So certainly there's some testimony from him. Alternatively, I'll say, Your Honor, 56-D only requires a judge in his or her discretion to grant discovery where it is essential to the case. And if you look at the 56-D affidavit here, the showing and the burden is on the appellant to show this, to show what hoped-for evidence they would get and how that evidence would make a difference and how they couldn't get that evidence through other means. And we get this specifically from the case of Roddy versus Sebelius, which I know is a case that Judge Traxler was recently on and a case that the appellant is relying on. The 56-D affidavits in both of those cases are actually quite similar. So on those grounds, Your Honor, I think this court, again, reviewing for abuse of discretion, can say that the district judge here was well within his discretion to deny 56-D relief. The other thing we pointed out in our briefs, Your Honor, is it is questionable as to whether they even preserved the issue below. If you look at Joint Appendix page 1835, the 56-D request was sandwiched in the middle of the legal standards section. And certainly I think this court could find that it wasn't preserved. But the 56-D affidavit was attached to their response to the motion, correct? That is correct, Your Honor. The other case that we cited on this 56-D issue, Your Honor, is the Amimokri case. That's a case that is actually quite similar to this one. Discrimination case, there was a large EEO record and there was also an evidentiary hearing in front of an ALJ. And that panel had no problems finding that there was no abuse of discretion there. In that case, didn't the court also say that all the central participants were all deposed in that case? That's correct, Your Honor. That's one factual distinction between that case and this one. But again, Your Honor, I think the real issue here is whether this is an abuse of discretion. And I think if one looks at just the enormous administrative record that we have, I think it's very clear that a district court can exercise its discretion to say, you have all the evidence you have that's essential to mount your opposition. And that's really what 56-D is about. Can you mount your opposition? And here, we have a 56-page... But the district judge never said that, though, did he? That you have enough evidence to mount your opposition. He never said anything about what his reason was for denying that motion. Well, Your Honor, I will say, he certainly did not in his first opinion. And in his second opinion, he certainly had the issues of the 56-D request before him, and he still denied it. So did he go into at length what his reasoning was? He didn't. And there certainly isn't anything in the record there. But what we did cite for you, Your Honors, is two cases under very similar procedural footings, where a district court's opinion is essentially silent on an issue that would otherwise get abuse of discretion standard in this court. And in both of those cases, the Belyakov case and the Malvin case, this court still applied that abuse of discretion standard. And the court did it because the decision by operation is an exercise of discretion. In other words, the district court certainly could have granted the relief that they wanted. The issue was front and center in front of him, and he decided not to grant that relief. So we respectfully submit on that issue, on the 56-D issue, this court should affirm the district court's denial of that relief. All right. Before we leave that subject, a mention was made by the appellant that there was some agreement between the attorneys not to pursue discovery. Are you familiar with what he's talking about? I'm not at all, Your Honor. And maybe I should tell the other part of the story just so we're completely clear. So we talked about what happened in the administrative phase. And, again, there might be some agreement that I'm not aware of, but it's my understanding that the union attorney for Ms. Works simply did not pursue the discovery that he otherwise could have. And then when Mr. Gilbert came on, the ALJ said, no, we're too far along and too close to our hearing to do that. Once the case got into the district court, what we did is we filed an initial motion to dismiss, but also in the alternative for summary judgment. And under the local rules of this court, a scheduling order doesn't go out and discovery can't take place until that initial motion is ruled on. So certainly there was no discussion amongst counsel and myself about discovery or not. By operation of the local rules, they couldn't take discovery while our motion was pending. Your Honors, I'd like to move now into the second issue that's been raised on appeal, and that's with regard to the disability discrimination case. And just a couple quick things I want to correct. Judge Thacker, you asked a question about who was Ms. Works' supervisor. I think my colleague misspoke. The answer that he should have given you was Marjorie Warner. She, in fact, was the rating supervisor, the person that reviewed this person. The person that he referenced, Ms. Noma Carter, was certainly somebody below Ms. Warner and gave assignments to Ms. Works. But the supervisor here, for purposes of who made the decision, it's Marjorie Warner. So, Your Honors, would this- Didn't Marjorie Warner indicate that in making that decision, she based it on the opinions of Ms. Works' co-workers? That's correct. She did get feedback from some of the co-workers, as well as Mr. Johnson B., as well as her own personal observations. And not all of those co-workers were deposed in the administrative proceeding, correct? Just to be clear, actually, I think none of them were deposed in the sense of a regular deposition. Everybody except for Johnson B., to my knowledge, was subject to direct examination and cross-examination at the evidentiary hearing in front of the ALJ. And again, my understanding is those depositions could have gone forward if the union attorney had requested them. So getting, Your Honors, to the heart of this discrimination claim, this is an employee that it is clear had performance problems. As we've set forth in our briefs, this is someone that many people had problems with her work performance. And we also cited all of the admissions that the plaintiff made as to the failings that she had. These problems were throughout the entirety of her probationary period. They started early on when she had a couple problems in October and December. I'm sorry, September, October, and November. Those projects that she had, she failed on. In December of 2002, she mentions to her doctors that her supervisors aren't happy with her performance. In March of 2003, she's told again that she's struggling and needs to improve. And then in June of 2003, she's told again that she needs to improve and that she's having troubles. And then finally we have this July 25th, 2003 Bankers Box incident, which really is the straw that breaks the camel's back and cements her non-retention. I want to briefly address one thing my colleague said, and he took issue with some of the cites that we had with respect to the admissions that were made by Ms. Works. I respectfully and quite vehemently disagree that there's any issue with those. I think if you look at the citations, they're taken verbatim from what Ms. Works said. I think what we heard from my colleague, Mr. Seymour, however, was an attempt to explain them away. The question that Chief Judge Traxler, I think, asked was about whether she had fallen asleep in meetings. And as if to say that was something that was incorrect in our brief, not so. They actually admitted that she fell asleep, but then tried to explain it away. And I think that's a consistent pattern that we see in the appellant's brief here. They sort of admit to the fact that she had these failings, but they want to try to minimize them in a way that helps their case. And that simply is not the way this works. This is an employer has the ability to demand that its employees are awake at meetings. An employer has the ability to demand that there's regular attendance. An employer has the ability to demand that performance is up to snuff. And that's what this case is about. This plaintiff was given opportunity after opportunity, and she just never quite rose to that level. And maybe that's through no fault of their own, but again, there's no evidence of discrimination here. And that's what this case is really about. But we've cited in our briefs that this case, I think, is most analogous to the Shin case. That's at 369 Federal Appendix 480, as well as the Runebaum case. That's an en banc decision, 123F3rd174. Both of those were instances where the employee simply couldn't perform the essential functions. But even if we go to that next step, even if we say that there's some issue of fact with respect to performance issues, and I don't think there is, but even if we do, this appellant still can't beat that next hurdle, that causation hurdle, to show that she was discriminated against solely because of her disability. In fact, everything I think shows the opposite. You see an agency that was giving copious amounts of leave to this individual, an agency that was giving her advanced sick leave. When she had that seizure in the office suite, they brought in a nurse to sort of educate all the other workers to say, if she has another seizure again, this is what you should do. There simply is no evidence of animus. There's no evidence of, you know, a unkind remark or any kind of untoward behavior. I think the record shows quite clearly she was terminated for these performance reasons, and again, those are well documented. So moving on, Your Honors, to this retaliation claim. Again, we also respectfully submit that the district court properly granted summary judgment on it. And if you look at, even if you take for a moment the idea that the request for leave that she made somehow constitutes protected activity, again, she can't quite jump that causation prong. There's no evidence to suggest that because of the leave she got, she subsequently wasn't retained. And the reason we say that is because the record is so replete with leave that she was granted quite freely, and she certainly was not terminated in the immediate aftermath of that. But when it came time to review her at the end of her probationary period, they looked at the performance and showed just quite simply, she just couldn't quite do it. And that's why she wasn't retained. And I'll go back, Your Honors, to that banker's box incident, one which the appellant certainly hasn't ever gained say. And that in and of itself is a firing offense. If you look at joint appendix pages 1121 to 1121, it shows very clearly an appellant that tried to deceive her supervisors by copying two pages over and over again and putting it into a box and dramatically giving it to her supervisors as if it would show the work that she had done. And then when she was caught, the record indicates that she broke down into tears and started to talk about personal problems with respect to her eviction and her husband. That incident by itself is one that an employee can be and frankly should be fired for. And that instance immediately presaged her termination. So based on that, based on the cases that we cited, the Tyndall case and the Myers case, we respectfully believe that the district court properly granted summary judgment on both the discrimination and the retaliation claims. I have a little bit of time. Oh, yes. Let me just try to get you to go back to the request for discovery issue. How would you define the relevance between her failure to seek discovery prior to the administrative hearing and her inability to get discovery when the lawsuit is brought in federal court? What's the relevance of those two? How would you describe the relevance? So it's relevant in, I think, one very important respect. If you look at the standard for 56D, it has to be something that's essential to your opposition and something that you couldn't otherwise have gotten through other means. That's my understanding of it and that's what I think the Roddy case shows. So I think the failure to go after this stuff in the administrative phase would mean she fails on that second prong, the idea that you can't show that you could have gotten it independently through some other means. They certainly had the chance to get it there and passed on that opportunity and, to a certain extent, had enormous amounts of opportunities on everybody else that actually really mattered. I mean, really what we're talking about here is she got a thousand pages of testimony, direct, cross, recross, redirect, the whole nine yards with respect to 90% of the people that matter here. The one that they're quibbling about now is this William Johnson B, who actually wasn't even the firing official. I think Marjorie Warner, as I indicated, was the primary mover and shaker. And the worry here, Your Honor, is if this 56D request can be granted, if they can come up with one sort of lower level subordinate co-worker or employee that they didn't get at the administrative phase and that will get them discovery in district court, I think that would set a very dangerous precedent for people not doing full discovery at the administrative phase and essentially sandbagging and holding something back at district court in case things go ill for you. I'm not saying that anything like that is happening here. I'm just saying that taking this to its logical extreme, it could be a very dangerous precedent. And really what we have to rely on is the district judge. And the district judge had this evidence in front of him and he should be able to exercise his discretion to say that one person that they didn't get, that was actually a very key person, I want to allow some discovery on that. But here he exercised his discretion to say there's an ample record here, it's been well developed, and we know that discovery wasn't warranted here. I think that's the relevance, Your Honor. Okay. Thank you. In just the brief time I have left, I do want to mention very quickly this Cleveland argument that we raised. The district court did not reach it, but certainly this court could affirm based on it. And this goes to a recent opinion actually that Judge Keenan was on the panel for. It was the EEOC versus the GBMC case. And that's the latest case that I know of this circuit talking about Cleveland. And it sets a very clear standard, the idea that if you are receiving 100% Social Security disability, you have to make an affirmment. You have to say to the Social Security Administration, not only am I unable to do my current job, I'm unable to do any job in the national economy, which is a very broad statement of incapacitation. On the same token, in order to bring this Rehabilitation Act case, you have to show the polar opposite. You have to show, in fact, that you're able to work, and maybe you're able to work with or without an accommodation. But so those are two diametrically opposed ideas. I have a question. Yes, Your Honor. What about the fact that this was a probationary program specifically for those receiving disability benefits to see if they could become productive in the workplace? So there's two responses to that, Your Honor. The first one being, I think, pursuant to the EEOC versus GBMC case, there was a two-sentence indication that this ticket-to-work program was not going to be sufficient to meet the requirement to make the explanation. The other answer I would give is, if you look at the Cleveland case itself, there has to be some factual proffer, and here they had their chance at Joint Appendix page 1849 to make that proffer, and this ticket-to-work program is actually not an argument that I think they even raised in their briefs. I see my time is up, but does that answer your question, Your Honor?  Okay. Thank you, Your Honors. Thank you very much. Mr. Seymour. Thank you, Your Honor. Time is pressing. There's one thing that I think I would be very remiss if I did not get it out during the course, and that is that the defendant's point, their basic argument in their brief and here before Your Honors is, that the administrative hearing is the equivalent of a judicial hearing and a district judge should have unfettered discretion with respect to whether any discovery should be allowed or whether it simply is going to be a review of the administrative record. Well, in 1976, which is 37 years ago, the Supreme Court rejected precisely that argument in Chandler against Rudebusch and the citation 425 U.S. 840 at age 61, and I'll put that in the letter to the court. But we've been there. We've done that. Second, the judge's Rule 56D ruling came up only on the motion for reconsideration. He did not mention it at all in the order granting summary judgment, and he said in the motion for reconsideration, and this is JA 2274, that he did not have to explain because it was implicit in the grant of summary judgment so that the Rule 56D motion was denied. So we don't know whether the district judge, I think, adopted what I think is the erroneous argument of the government, that it has to be contained in some separate piece of paper or attached to some other document or something like that. It was fairly presented to the district court, and the district court, for reasons that no one can possibly imagine, denied the thing. Now, as to the need for documents, we know the government, again, is playing a little bit of a shell game here in terms of who knows what. There's no question in the record that Noma Carter was the immediate supervisor, and she was the only person who was the immediate supervisor of the plaintiff. Above that is Johnson Bay. Above that is Ms. Warner. Ms. Warner is a couple levels removed. She deals with 30-odd people, between 30 and 40 people every day. She does not have the day-to-day knowledge that Noma Carter has. We don't know that she's the decision maker because of that testimony that I cited, Your Honor, in the opening argument. But we do know that she was absent from the workforce for some of the key periods of time while things were going on, while she says that the plaintiff was not engaging in any improvement. And that's JA 13-32-33. She had a problem with her daughter. She had to take him off from work for that, and then she fractured her ankle and was absent from work because of that. And in the process of reaching a decision, we have an irregularity. She froze Noma Carter, whose view she already knew, because Noma Carter had told her that the performance was totally satisfactory. She froze her out of the information-gathering process. That's not normal. The Supreme Court said in Village of Arlington Heights that departure from normal procedures is evidence from which a jury can infer bias. Going on to some of the errors made by the government, the union representative was not an attorney. Ms. Works represented herself the best she could at the unemployment compensation hearing. She did get from Mr. Johnson Bay the admission that the persons who completed these assignments she was not able to were grade 12 people, and she was a grade 6 person. So there's an enormous difference in expected skill from that. The need for documents in having an effective cross-examination cannot really be doubted this late in the day. There are going to be e-mails. There are going to be memoranda. There are going to be notes. None of those were available at the administrative hearing because the non-attorney representing Ms. Works during the discovery period did not seek discovery, and we don't have them now. But you cannot really effectively cross-examine someone without documents and expect to get the same information that you would get with the benefit of the documents. There's another point. We refer to the discretion of the district court. Now, Mr. Johnson Bay and Ms. Warner both testified that plaintiff's performance was basically satisfactory at the mid-year review. The district court rejected that. He said it was inexplicable. The district judge is now rejecting the credibility of the person who at that time was presented as being the decision-maker by the government because he thinks that he knows better from the evidence. He's making weighing decisions all throughout this decision. He says that things are undisputed when there's clear record evidence that does dispute them. In effect, the district court was setting itself up as a super HR department, a human relations department, making determinations that the government did not make, just like the argument that we heard counsel make a moment ago, saying that the banker's box cemented it and would have required her termination. That was not one of the stated bases for determination, and the law is pretty clear that counsel cannot invent a reason and say that this would have justified it when review is being sought of it. With respect to the Cleveland versus policy management point, essentially the government is arguing that because someone said they were totally disabled in 1992 and 10 years later participates in this program, it's open season. The government can do whatever it wishes. Counsel relied upon the granting of leave. Trapdoor leave is not much of an accommodation. I say it's trapdoor because the statement terminating the plaintiff relied on the fact that she'd been away on leave and that the leave that she had could not always be set in advance, so it's unscheduled leave. She was fired because of this accommodation they supposedly gave her. Now, I don't think that's much of an accommodation when it's trapdoor leave, and it certainly is not reasonable. Your Honor, I think that those are the essential points. If there's any question in the last three seconds. I presume you never found any reference in the record to an agreement not to pursue discovery in the administrative hearing. No, Your Honor. I thought it was an agreement not to pursue discovery in the court hearing, but defense counsel explained that that was because the rules did not allow it. And if I'd been brighter, I would have thought of that myself. But there is nothing that I'm aware of that explains why the lay representative that she had did not pursue discovery in the administrative hearing. But it doesn't matter because Chandler held that this is not to be reviewed on the administrative record. It's a trial de novo, and that requires. And the rule by the rules did not allow it. You're referring to what appellee mentioned about the local rule does not permit discovery until the motion is ruled upon. I'm not sure it's just a local rule, Your Honor. I believe the federal rules of civil procedure say you don't get discovery until you have the rule 16 F meeting and you've got the made the report to the court on discovery. And that is all put off when you've got a motion to dismiss. That's why it's so advantageous for defendants to combine a summary judgment motion with a motion to dismiss, because it freezes the plaintiff out from any effective means to have a just resolution of the case. It seems to be an abuse of the rules, but that's the effect of it. Yes. OK. Thank you very much. This concludes here. Thank you. Thank you. We'll adjourn. This article, of course, stands adjourned. Sign a day. I say United States and this honorable court.
judges: William B. Traxler, Jr., Barbara Milano Keenan, Stephanie D. Thacker